[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case is before the court because of the plaintiffs' dissatisfaction with sloppy supervision of the construction and erection of a single family dwelling built and sold by the defendant to the plaintiffs, and the failure of the defendant to complete certain construction.
The following facts are not in dispute. In April, 1986, the plaintiffs and the defendant signed an agreement for the construction and sale of a one-family residential house located in Indian Hill Lane, New Fairfield, Connecticut, for the sum of $248,900. The defendant has been at all times a Connecticut corporation engaged in the business of residential and commercial construction, with a principal place of business located in New Fairfield. Although the defendant denied in its pleadings that the plaintiffs duly fulfilled all the conditions of said contract on their part, by paying for the constructed house and taking title to it, the president of the defendant corporation admitted on the witness stand that all sums required by the contract to be paid had in fact been paid by them. On or about December 18, 1986, the plaintiffs took title to the Indian Hill premises and, at closing the defendant's initial construction of the septic disposal system, included a cast iron soil pipe carrying from the main structure of the house to the septic tank. A certificate of occupancy was issued to the defendant for the premises in this condition. Subsequent to the issuance of that certificate of occupancy, the cast iron pipe was removed by the defendant so as to relocate the outlet. The iron pipe was then replaced by the defendant with ABS black plastic pipe. At the closing, the defendant represented that the premises had been constructed in accordance with all applicable building requirements and that a certificate of occupancy had been properly issued. CT Page 9360
An exhibit was introduced at trial which consisted of an agreement made at the time the plaintiffs purchased the premises from the defendant. It contained a punch list of unfinished items. The defendant maintains that this constituted a new contract supplanting the obligations of the old in toto. The court rejects this view of the matter. The court finds that the agreement which the parties made at closing was an executory accord breached by the defendant. Upon such a breach, the plaintiffs were free to enforce either the original duty or the accord. They chose to enforce the original duty and had every right to do so.
The plaintiffs contended in their complaint that the septic system does not meet state code requirements in that under the State Health Code, Sec. 19-13-B103d(b), Table No. 2, Technical Standards, ABS plastic pipe may not serve as a soil pipe and carry outside the foundation, and the coupling on said pipe was not fit for its use. The court finds that portion of the complaint proved and that the plaintiffs suffered $1,383.20) in damages, a portion of which related to replacing the ABS pipe, and the remainder of which related to completion of rough plumbing for a basement half (1/2) bath.
The defendant appears to claim that there is insufficient evidence that the ABS plastic pipe did not comply with the State Public Health Code. The court finds credible Mr. Simpkin's testimony that it did not and does not. The fact that a certificate of occupancy was issued by the town, although the kind of pipe did not comply with section 19-13-B103 of the Public Health Code, does not insulate the defendant from its contractual obligation to construct in a good and workmanlike manner and to complete the premises in accordance with the applicable septic ordinances. Although Schedule B of the contract immediately after paragraph 3 provides that: "The issuance and delivery of the aforesaid certificate of occupancy . . . shall be the only obligation of the Seller to the buyer in connection with the septic disposal system" and that the seller shall not be responsible for subsequent malfunctions after its issuance, the last sentence indicates that "[n]otwithstanding, the Seller shall remain liable for his guarantee of said septic system for a period of one (1) year from the date of closing against any defects in workmanship and materials. . . ." (Emphasis supplied.) Furthermore, Mr. Doski's testimony and opinions are credible that it is not good and workmanlike construction to use that kind of pipe. CT Page 9361
The contract of the parties under a portion of the specifications entitled "Extras" provided in pertinent part that "[t]he following are extras to the contract at the buyer's option and include labor, materials, installation and sales tax. . . . Rough plumbing in basement if feasible." The defendant claims in its brief that because no price is set out for this that there was no obligation on the part of the defendant to perform. The court rejects that view. The court construes the contract to require this installation without extra charge if feasible, and it is satisfied from the evidence that it was feasible. This item was itemized. It, therefore, did not require any future writing under another contractual clause which provided: "Extras not itemized must be agreed to in writing by the parties."
The defendants also offered testimony about the resulting loss of 200 square feet of living space caused by installation with modifications because the cellar had already been poured, and Mrs. Warton offered her opinion that the damages at the rate of $10 per square foot for the useable space lost reasonably approximating $2,000 are the additional loss suffered by the plaintiffs because of the defendant's failure to make proper installation.
A plaintiff entitled to performance under a contract is entitled to recover all of those damages which flow naturally from a defendant's breach, so that he or she is placed in as nearly the same position by award of money damages as would have existed had the breach not occurred. The plaintiff has prayed for damages in the prayer for relief and alleged a failure to construct the house in a workmanlike manner.
However, the plaintiffs have not pled any diminution in value of the premises resulting from the defendant's brief. In reviewing the amended complaint and construing it broadly, the court agrees with the defendant's contention that a liberal reading of it reveals it does not plead diminution in value as a damage flowing from the defendant's failure to install rough plumbing. Since the plaintiffs' recovery is limited by what they pled, the court cannot find diminution of value damages.
The plaintiffs also pled that there was no half (1/2) bath in the basement. The contract between the parties did not require the defendant to put in a complete bath, but rough plumbing was to have been installed if feasible. It was feasible, but not CT Page 9362 installed because the defendant forgot about it until after the cellar concrete was poured. The court finds that the defendant's failure to do so violated its contractual agreement to do so, and that the remaining portion of the $1,383.20 bill to Barlow Plumbing was necessarily spent by the plaintiffs to get the basement bathroom rough plumbing done because of the defendant's breach of contractual obligation.
The plaintiffs have also complained that the defendant constructed the premises in such a way that there was a large crack in one of the foundation walls. The court finds that the defendant did not construct this portion of the premises in a good and workmanlike manner as the contract required. The defendant's foundation guaranty did not extend to "cracks and spaces resulting from normal settling." While there was some evidence that cracks in foundations can occur due to normal settlement, there was no indication that a fissure as wide as that found in the Warton house was normal. Furthermore, even if one accepts for a moment that such a crack was normal, the contract of the parties provided that the foundation have waterproofing with one coat of foundation tar. When read with the general contract requirement to construct in a good and workmanlike manner, this indicates to the court that what the parties contemplated would be built was a concrete cellar foundation which was dry after the rainfalls of the four seasons or waterproof. It was the defendant's obligation under the guaranty to repair any cracks of the kind now admitting water to the premises. It did not do so. Despite the defendant's attempted to repair, however, water still comes into the house through the foundation crack. The plaintiffs had a contractual right to expect a foundation without such a wide fissure admitting water to the basement. The court further finds that the defendant did not honor its guarantee and correct the problem. The court, based on the evidence before it, finds that the plaintiff, John Warton, was reasonably required to expend twelve hours time in cleaning out the fissure and patching and sealing it, and that his estimate of the value of these services is most reasonable at $14 per hour. The plaintiff for the breach of the contract by the defendant is entitled to recover of the defendant the sum of $168 plus $82.50 in equipment and materials.
The plaintiffs pled that:
 The combination of the foundation settling caused by the defendant's failure to avoid excessive ground water accumulation in and around the foundation and the failure of the defendant to provide adequate CT Page 9363 drainage or ground cover has resulted in large cracks and nail pippins
in the dry wall, and large foundational cracks which have caused water to flow into the basement.
Other than what was expended and has been awarded as damages for the failure of the defendant to honor its guaranty and contractual duty to build in a good and workmanlike manner and waterproof the cellar, there is no further credible evidence as to damages for future corrective work, and therefore the court does not find proved the allegation as to this claim that the plaintiffs "will expend large sums of money to correct the defects."
The plaintiffs complained of nail pops; however, there is insufficient evidence of their flowing from the breach of contract by the defendant and, in any event, insufficient evidence as to damages. The court, therefore, finds for the defendant on that issue.
The plaintiffs claim that they suffered damages because the defendant constructed a "bury pit" within the reserve area of the septic field. The plaintiffs have not proved this claim for damages and the court finds for the defendant on this issue.
The plaintiffs have also claimed that the septic system does not meet state code requirements in that under the State Health Code, Sec. 8F(1) Table No. 6 of the Technical Standards issued pursuant to section 19-13-B103, the septic field in its present state is not sufficient. From the credible evidence, the court does not find this allegation proved. While the installation does not meet 1986 code requirements in effect at the time of construction, it does appear, as Town Sanitarian, Simpkins, testified, to meet present day requirements. There is no evidence of overflow or effluent reaching the surface. The evidence of New Fairfield Town Sanitarian, Simpkins, is credible that the septic field in its present state is sufficient. The plaintiff, John Warton, admits that there have been no problems with the surface leaching or overflow of effluent from the septic field since he occupied the house, after a December, 1986, closing. Despite the language of the complaint, the plaintiffs seek to avoid the fair import of it by urging that the last amendment to the complaint, which bore a date of 1990, related back to the date of the original complaint in 1987. A complaint amendment relates back to the date of an original complaint for the purposes of toiling the statute of limitations, but that principle should not be confused CT Page 9364 with a common sense reading of pleadings. From 1990, the plaintiffs pleaded that their septic system did not presently
meet regulations. It does, though once it did not. The court finds for the defendant on this issue.
The plaintiffs also claim damages because they are exposed to the possibility of a complaint by the town to abate a public health nuisance. The court finds it highly unlikely that the Town of New Fairfield will issue a complaint requiring them to abate a public health nuisance because of the way the premises have been constructed. There has been no complaint from municipal authorities about how the system works and that is understandable because in seven years the plaintiffs have experienced no problem with the way it works. The plaintiffs did receive a letter from the Town Sanitarian's office which was similar to one sent to many other property owners within the Town of New Fairfield indicating that Town records were inadequate as to the septic system. That letter is evidently the result of some bureaucratic cover as a result of the Town of New Fairfield's past slipshod record keeping and administration of septic installations, not just with the Warton property but with very many other properties in that community. When pressed by the plaintiffs in direct examination, the present Town Sanitarian indicated that the only further action which might be required would be a review of the septic design by an engineer. The court is not convinced that there is a probability of that sort of order being issued or that the lack of proper town records resulted from the delict or breach of the defendant. The court finds for the defendant on the claim that the plaintiffs are exposed to a municipal complaint about the septic system as a result of any breach on the defendant.
The plaintiffs claim that the benefit of their bargain with the defendant entitles them to a "1986" conforming septic system installation, because their entitlement was to a system which met 1986 requirements according to the contract and the duty of defendant to construct in a good and workmanlike manner. The court has no credible evidence before it of what additional sum would be required to bring about an installation conforming with the now out of date 1986 code, and finds for the defendant on that issue.
The plaintiffs also contend that the defendant installed an insufficient amount of processed stone in the driveway. They further complain that bare earth showed through the processed CT Page 9365 stone in numerous areas where heavy equipment was driven after the original stone had been placed, and low spots were created by such heavy equipment use where water accumulated, all of which Richard T. Johnson, president of the defendant corporation, acknowledged prior to closing and reaffirmed after closing. He admitted as much in his court testimony. The contract specifications required that as to driveway, the contractor would supply and install a "processed stone driveway 10 feet wide[,] 28 foot x 32 foot turnaround." Although the depth of the stone is not specified, the court construes the contract to reasonably oblige installation of a reasonable amount of such stone sufficient to cover the soil evenly and permit vehicular traffic. Leaving the driveway with low spots caused by the contractor's heavy equipment was not good and workmanlike. The plaintiffs eventually blacktopped the driveway, but the court is satisfied that some $1,700 of that pouring expense related to bringing in the stone which the defendant should have laid and supplied sufficient to cover the soil evenly and permit traverse by vehicles. The defendant is responsible for these damages and is entitled to recover that $1,700 stone laying expenditure from the defendant. The defendant had a contractual duty to remedy defects in workmanship and materials which manifested within one year. It did not honor it. The court is satisfied that the plaintiffs have fairly approximated the future damages they pled they would have to expend because of this continuing contractual breach.
The plaintiffs also contend that a portion of the walkway to the front stairs is without slate squares, and claims $111 damages. Ninety-nine ($99) dollars worth of slate and another $12 of other materials would have to be used to correct that deficiency. The defendant once claimed that the contract did not require any slate to be installed on the walkway to the front stairs, but now concedes the specifications do. The defendant states that the plaintiffs have not proved a breach. The defendant had adequate opportunity to cross-examine. The court is satisfied by the plaintiffs' testimony that slate was not installed by the defendant and that this failure breached the contract and that these damages are proved. The court finds the plaintiffs entitled to $111 for that breach. Since the plaintiffs seek no reimbursement for labor used in acquiring materials and installing them, the court deems plaintiffs' estimate reasonable as to damages. Although the price for stone was determined well after the date of the breach, the court believes it a fair inference that labor is a multiple of CT Page 9366 materials costs. Given the fact that plaintiffs seek no reimbursement for labor used in acquiring, transporting and installing the stone, and the cost of the stone, any increase in stone cost from the date of breach to the plaintiffs' purchase of it is not a significant factor in the defendant's evidence of the resulting damages. Damages need not be proved with mathematical precision. In the court's opinion, plaintiffs have provided it with a fair and reasonable estimate of damages.
The plaintiffs also contend that the following interior items remain unfinished or inoperable: (1) window grills have not been supplied; (2) the heating registers in the bedroom and family room do not close; (3) the trim on the stairs is unfinished; and (4) the bedroom closet doors are askew.
Although the defendant, through its president, indicated that the proper grills probably were not installed, eventually after nine or ten calls, the plaintiff, Mrs. Warton, was told by the defendant's office manager to gel the proper grills from Gerrity Lumber. She did so and they were installed by the plaintiffs and no materials were billed to her. The court finds that $200 is the reasonable value of Mrs. Warton's services and time in bringing this installation about, and that sum is awarded to the plaintiff as damages for the defendant's nonperformance.
Doors are not specifically mentioned in the specs in the contract; nonetheless, the sketch attached to the contract shows interior doors. Insufficient evidence was presented about the damages resulting from incomplete trim, and therefore that claim in the complaint is unproved. The court finds credible the testimony that the bedroom and closet doors are askew, but since money damages as a result of this defect are speculative and unproved, the court finds for the defendant on that issue.
The contract makes no mention of heating registers. In fact, it requires baseboard heat. The plaintiffs, having come from the midwest, used the misnomer "registers" to describe the baseboard of their baseboard hot water system in their complaint. The court finds a breach of contract occurring because of the manner in which the covers for the baseboard heat were left dented and damaged by the defendant at the time the plaintiffs took title and occupancy. However, the damages arising from the breach were left to speculation and not proved.
The plaintiffs' complaint alleges that the defendant CT Page 9367 misrepresented water well quality at the time of closing. Water from the well serving the premises is and has been potable. However, the plaintiffs have apparently harbored a belief that the water used for an initial water well test was taken from a source other than their well, and this showed a more desirable mineral content than actually is found in the well constructed for them. The court does not find that misrepresentation claim has been proved by clear and convincing evidence or even by a preponderance of the evidence.
There is a third count complaint sounding in CUTPA based upon allegedly fraudulently made misrepresentations as to the (1) acceptability of the ABS pipe; (2) chemical composition of the water; and (3) compliance of the house with all building requirements and that a certificate of occupancy had issued. The court finds none of these fraud claims proved by clear and convincing evidence. Plaintiffs have established that the supervision of and actual construction of their house was accomplished in a negligent, poorly organized and slipshod manner in several respects. However, that kind of negligence is insufficient to constitute the fraudulent conduct which plaintiffs plead as the basis of their CUTPA allegations. The court finds for the defendant on that issue.
As to the damages awarded, the court finds that the remedial steps taken by the plaintiffs to remedy the defendant's defective workmanship and omissions were reasonable and calculated to bring about completion in accordance with the original contract.
In summary, the court awards the following damages to the plaintiffs:
 $1,383.00 Replacement of ABS pipe and installation of basement rough plumbing.
242.50 Repair of crack in cellar foundation walls.
1,700.00 Driveway stone.
111.00 Walkway stone.
 200.00 Reasonable value of Mrs. Warton's efforts in bringing about grill installation.
Judgment is ordered to enter in favor of the plaintiffs and CT Page 9368 against the defendant in the amount of $3,644.50, plus costs.
Flynn, J.
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.]
CT Page 9374